**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FANON ZUBER, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 22-3661 |
| | : | |
| JAIME SORBER, *et al.*, | : | |
|     Defendants. | : | |

**<u>MEMORANDUM</u>**

PADOVA, J.                                                        JANUARY 9, 2023

    *Pro se* Plaintiff Fanon Zuber is a prisoner at SCI Albion.  He filed this civil rights action pursuant to 42 U.S.C. § 1983.  He asserts claims against prison officials associated with SCI Phoenix after he contracted COVID-19 at the prison.  For the following reasons, the Court will dismiss Zuber's claims in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  Because some of his claims will be dismissed without prejudice, he will be permitted to file an amended complaint.

**I.    FACTUAL ALLEGATIONS**

    Zuber alleges that he contracted COVID-19 from a cellmate at SCI Phoenix after the prison failed to properly quarantine the cellmate.[1]  (Compl. at 15.)[2]  The cellmate had just transferred to SCI Phoenix from SCI Camp Hill on October 15, 2020, and was placed in the

---

[1] Zuber's Complaint names the following Defendants associated with SCI Phoenix: (1) Jaime Sorber, Superintendent; (2) Bernard Panasiewicz, Deputy Superintendent; (3) Mandy Sipple, Deputy Superintendent; (4) Joseph Terra, Deputy Superintendent (5) Darryl Bradley, Deputy Superintendent; (6) Robert Terra, Major; (7) Scott Bowman, Major; (8) Gina Clark, Major; (9) Thomas Grenevich, Unit Manager; (10) James Day, Unit Manager; and (11) Dr. Stephen Kaminsky.  (Compl. at 14.)

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

quarantine unit prior to being housed with Zuber in the R-Unit.  (*Id*. at 15-16.)  On day seven of his quarantine, the cellmate was tested for COVID-19 but was not tested again before being transferred to Zuber's cell on October 28, 2020.  (*Id*.)  Zuber contends that his cellmate should have been tested for COVID-19 on the fourteenth day of the quarantine period instead of only being tested on the seventh day.  (*Id*. at 23.)  Three days after the cellmate moved into Zuber's cell, "the water went out and there was no running water on the R-Unit" for three days.  (*Id*. at 16.)

Zuber began to feel symptoms of COVID-19 (headache, body aches, and chills) on November 8, 2020, and tested positive for the virus on November 11, 2020.  (*Id*. at 16, 23.)  He was placed in the "Special Observation Unit (SOU)," which was being used as a COVID-19 isolation unit.  (*Id*.)  Despite "experiencing light sensitivity due to headaches," Zuber was placed in a cell with "constant light which brightened every two hours."  (*Id*. at 16.)  Zuber was then moved to the L-Unit, which "used the C-Pod to house those quarantining from COVID-19."  (*Id*. at 16, 23.)  There were 24 cells on the C-Pod and only three other inmates were there at the time Zuber was there.  (*Id*. at 16.)  Despite this, the prison required Zuber to share a cell with another COVID-19 positive inmate who had "different symptoms" than Zuber without regard to "cross contamination or enhancement of the disease."  (*Id*.)

During his two-week stay on the L-C Unit, Zuber was not provided with a bar of soap, a washcloth, or cleaning supplies "to ensure a clean and hygienic living space."  (*Id*. at 16-17, 24.)  He was also not able to take a shower or use the telephone while on the L-C Unit.  (*Id*. at 16-17.)  Finally, he was not permitted his "personal property" on the unit, such as his hygiene products, change of underwear, and food.  (*Id*. at 17.)  After Zuber complained about the lack of showers

and telephone usage in the COVID-19 isolation unit, prison officials allegedly began providing them to inmates at the unit.  (*Id*. at 18.)

Based on these allegations, Zuber asserts Eighth Amendment claims under § 1983.  He seeks money damages and an injunction requiring the prison to change its COVID-19 quarantine policy.[3]  (*Id*.)

## II.   STANDARD OF REVIEW

Although Zuber has paid the filing fee in full,[4] the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding in forma pauperis).  Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id*. § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id*. § 1915A(b)(2).

---

[3] Zuber's claims for injunctive relief in connection with his requests to change the COVID-19 quarantine policy are now moot as Zuber is no longer in the custody of SCI Phoenix.  *See Robinson v. Cameron*, 814 F. App'x 724 (3d Cir. 2020) (dismissing appeal as moot where suit sought only injunctive relief and inmate was no longer in custody); *Griffin v. Beard*, 401 F. App'x 715, 716 (3d Cir. 2010) (*per curiam*) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims.").

[4] When initiating this action, Zuber requested leave to proceed *in forma pauperis*.  (*See* ECF No. 1.)  On September 21, 2022, the Court entered an Order denying Zuber's Motion without prejudice.  (ECF No. 5.)  He subsequently paid the fees to commence this civil action.

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Neal v. Pennsylvania. Bd. of Prob. & Parole*, Civ. A. No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (third and fifth alterations in the original) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations are not sufficient to state a claim for relief.  *Iqbal*, 556 U.S. at 678.  Additionally, the Court must dismiss any claims over which it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc*., 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). As Zuber is proceeding *pro se*, the Court construes his filings liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

Zuber asserts constitutional claims against the Defendants pursuant to § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution

and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A defendant in a §1983 action "must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted). Therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Id.*

A.     **Official Capacity Claims**

Zuber names all Defendants in their official and individual capacities. Official capacity claims are indistinguishable from claims against the governmental entity that employs the Defendants, here the Pennsylvania Department of Corrections ("DOC"). *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dept. of Soc. Servs*., 436 U.S. 658, 690, n. 55 (1978)). Because the DOC is an agency of the Commonwealth of Pennsylvania, it is not a "person" subject to liability under § 1983, and is in any event entitled to Eleventh Amendment immunity from suit in federal court. *See Lavia v. Pennsylvania, Dep't of Corr*., 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity"). The DOC is also not considered a person for purposes of § 1983 because it is a state agency. *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI-Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983." (citation omitted)). Thus, official capacity claims against the Defendants are really claims against the

DOC, which is shielded from § 1983 suits by Eleventh Amendment immunity. *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."). Accordingly, all claims asserted against Defendants in their official capacity are dismissed with prejudice.

### B.    Individual Capacity Claims

Zuber alleges that Defendants failed to implement effective protocols at SCI Phoenix to combat COVID-19, which ultimately caused him to contract the virus. He also alleges that the conditions of his confinement while isolating to recover from COVID-19 – including being denied cleaning and hygiene products, being exposed to constant lighting, and not being permitted to shower or use the telephone – were unconstitutional. The Court understands Zuber to be asserting deliberate indifference claims under the Eighth Amendment.

Zuber's claims fail as pled because he does not allege how any of the named Defendants were personally involved in the alleged violation of his rights. As noted above, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983. *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ." (citations omitted)); *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *see also Barkes v. First Corr. Med., Inc*., 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015) (explaining that supervisors may be liable under § 1983 if they established and maintained an unconstitutional policy or custom, directed others to violate the plaintiff's rights, or had knowledge of and acquiesced in their subordinates' conduct (citations omitted)).

6

Zuber states that "Defendants have failed to respond to and manage the continued risk of harm caused by the COVID-19 outbreak" and that "Defendants have failed to provide for adequate isolation or quarantine measures."  (Compl. at 17.)  Zuber does not describe, however, how each of the specifically named Defendants was involved in this alleged violation of his rights.  Instead, he refers to Defendants collectively as violating his Eighth Amendment rights, without clarifying the specific involvement by each.  This is insufficient to state a plausible constitutional claim under §1983.  *See Lawal v. McDonald*, 546 F. App'x 107, 113-14 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff).  Accordingly, the Complaint fails to state Eighth Amendment claims against any Defendant.[5]

Zuber's claims also fail to sufficiently plead plausible claims for other reasons.  His Eighth Amendment claims based on Defendants' alleged failure to manage the spread of COVID-19 are not plausible.  To state a constitutional claim in the context of COVID-19 management, Zuber must allege facts to support a plausible inference that prison officials were

---

[5] To the extent that Zuber brings claims against some of the Defendants based solely on their involvement in denying his grievances, such claims are not viable.  This is because participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation.  *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants . . . who participated only in the denial of [the plaintiff]'s grievances – lacked the requisite personal involvement [in the conduct at issue]." (citing Rode, 845 F.2d at 1208)); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of [the plaintiff]'s prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").

Moreover, to the extent Zuber named certain Defendants simply because they are high level officials, this is also not sufficient to state a plausible claim.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation).

deliberately indifferent to his serious medical needs. *See Hope v. Warden York Cty. Prison*, 972

F.3d 310, 325 (3d Cir. 2020). To meet this standard, the facts alleged must reflect that the

"Government knew of and disregarded an excessive risk to [his] health and safety." *Id*. at 329

(citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). "The context of the Government's

conduct is essential to determine whether it shows the requisite deliberate indifference," and, in

this context, a reviewing court must defer to the expertise of both medical officials and jail

administrators, and not assume a constitutional defect where concrete action has been taken in

response to the COVID-19 pandemic, as constitutional rules "'are not subject to mechanical

application *in unfamiliar territory*.'" *Id*. at 330 (quoting *County of Sacramento v. Lewis*, 523

U.S. 833, 850 (1998)). Thus, where the facility has taken concrete steps towards mitigating the

medical effects of COVID-19 in a detention facility, a prisoner will fall "well short" of

establishing that the facility and its staff were deliberately indifferent toward his medical needs

in light of the virus, even though prison official did not "eliminate all risk" of contracting

COVID. *Id*. at 330-31.

Zuber alleges that he contracted COVID-19 as a result of SCI Phoenix's inadequate

quarantine protocols. He also alleges that once he tested positive, Defendants were deliberately

indifferent to his medical needs and the risk of "cross contamination" by bunking him with a

COVID-19 positive cellmate. (Compl. at 16.) Zuber's allegations are conclusory and do not

raise a plausible inference that Defendants disregarded an excessive risk to Zuber's health or

safety. To the contrary, as the allegations of the Complaint and attached exhibits reflect, prison

officials at SCI Phoenix implemented various measures established by the Pennsylvania

Department of Corrections to combat the spread of COVID-19. (Compl. at 26.) In addition to

requiring that inmates transferring to the prison be tested for COVID-19 prior to transfer and

quarantine for fourteen days upon arrival, the prison also implemented measures such as "the issuance of masks, cleaning schedules, quarantine guidelines, and small cohort sizes." (*Id.*) Zuber's COVID-19 diagnosis alone is an insufficient basis upon which to establish a constitutional violation. *See Hope*, 972 F.3d at 330 (explaining that the Constitution does not require the government to entirely eliminate risk of contracting COVID-19 in a correctional setting, stating "[plaintiffs] argue that the Government must eliminate *entirely* their risk of contracting COVID-19. That task is not the constitutional standard, however"). Zuber has therefore failed to allege that Defendants acted with deliberate indifference in the manner in which they handled COVID-19 at the time Zuber was incarcerated at SCI Phoenix. *See Muata v. Hicks*, No. 21-3210, 2022 WL 2526692, at *1 (3d Cir. July 7, 2022) ("Even if plaintiffs could show that [the high-ranking prison official defendants] knew of the risk posed by COVID-19, despite its unprecedented and unpredictable nature, they have failed to allege that either defendant disregarded that risk when creating the prison's policies.").

Zuber has also failed to allege plausible Eighth Amendment deliberate indifference claims based on the conditions of his confinement. We apply a two-prong test "[t]o determine whether prison officials have violated the Eighth Amendment." *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020). Thus, the complaint must allege that "(1) the deprivation [is] 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Such necessities include "food, clothing, shelter, medical care, and reasonable safety." *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). However, negligence is insufficient to allege a claim under § 1983. *See Farmer*, 511

U.S. at 835; *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) (*per curiam*) ("Here, the allegations contained in the amended complaint, taken as true, assert a simple negligence claim at most, and thus do not state a claim of a constitutional violation under the Eighth Amendment."). Only conditions of confinement that "cause inmates to endure such genuine privations and hardship over an extended period of time" violate the Eighth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (internal quotation omitted).

Zuber alleges that he was deprived of running water for three days while in the Special Observation Unit and that he was denied showers, telephone calls, and cleaning products for the entirety of his 14-day isolation while recovering from COVID-19. As stated above, Zuber has not tied any of these alleged deprivations to any specific Defendant. Even if he had, the allegations to not support an inference that the deprivations were sufficiently serious or that Defendants were deliberately indifferent to inmate health or safety. With respect to the water shutoff while Zuber was on the R-Unit, allegations that there was no running water, without more, are not sufficient to state a claim. In this regard, Zuber has not alleged whether, during the water shut off, he was denied any access to water for cleaning or drinking or whether he was otherwise denied basic necessities. *Compare Collier v. Adams*, 602 F. App'x 850, 852 (3d Cir. 2015) (*per curiam*) (concluding there was no Eighth Amendment violation where prisoner's water was shut off for 77 hours, but other fluids were available to him) with C*havarriaga v. New Jersey Dep't of Corr*., 806 F.3d 210, 228-29 (3d Cir. 2015) (holding that a complete lack of potable water for three days "other than water in a toilet bowl . . . poses a clear 'substantial risk of serious harm' to an inmate." (quoting *Farmer*, 511 U.S. at 833-34)). Absent additional details

and context related to the water shut off, Zuber has not adequately stated a plausible claim based on the deprivation of water while on the L-C Unit.

Zuber has also not provided sufficient details regarding his exposure to constant light while on the Special Observation Unit to state a plausible Eighth Amendment claim.  Requiring an inmate to live in "constant illumination" can, under certain circumstances, rise to the level of an Eighth Amendment violation if it causes the inmate to suffer a significant medical condition. *See Bacon v. Minner*, 229 F. App'x 96, 100 (3d Cir. 2007); *cf. Cadet v. Owners or Berks Cty. Jail*, Civ. A. No. 16-2829, 2017 WL 634070, at *3 (E.D. Pa. Feb. 15, 2017) (denying motion to dismiss Eighth Amendment claim where the plaintiff alleged the illumination was constant, was bright enough to prevent him from sleeping, and caused him physical harm).  Zuber has not stated how long he stayed at the Special Observation Unit or how long he was allegedly exposed to the constant light.  He has also failed to allege how he was harmed by the constant light. Although he alleged that his COVID-19 headaches made him sensitive to light, he did not state how the light itself caused him to suffer significant harm.

Zuber has also not plausibly alleged claims based on the deprivation of showers and cleaning products during his 14-day COVID-19 isolation period.  His allegations do not support an inference that the deprivations were sufficiently serious, that he was harmed by the deprivations, or that Defendants consciously disregarded a serious risk to his health or safety. *See, e.g., Barndt v. Wenerowicz*, No. 15-2729, 2016 WL 6612441, at *4 (E.D. Pa. Nov. 8, 2016), *aff'd*, 698 F. App'x 673 (3d Cir. 2017) (denial of showers and out of cell exercise for twenty-eight days did not violate Eighth Amendment when plaintiff did not suffer ill effects and had access to running water in his cell); *Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (*per curiam*) (concluding that denial of showers for fifteen days did not violate Eighth

11

Amendment when inmate did not "suffer[ ] any harm as a result of the denial of additional showers"); *Thomas v. SCI Graterford*, No. 11-6799, 2014 WL 550555, at *5 (E.D. Pa. Feb. 12, 2014) (concluding that denial of cleaning supplies for a two-week period was not sufficiently serious to satisfy the objective component of an Eighth Amendment claim); *see also Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (*per curiam*) (concluding that whether plaintiff suffered harm was critical to determination of whether unsanitary conditions were unconstitutional).

Finally, Zuber's Eighth Amendment claims based on the deprivation of phone calls during his 14-day isolation do not qualify as an Eighth Amendment violation. *See Castillo v. FBOP*, No. 05-5076, 2006 WL 1764400, at *6 (D.N.J. June 23, 2006) ("Indeed, telephone and visitation contacts do not qualify as minimal life's necessities, such as adequate food, clothing, shelter, sanitation, medical care and personal safety.").

To the extent that Zuber asserts a First Amendment claim based on his inability to make telephone calls while at the L-C Unit, such claim is also not plausible as pled. Although prisoners may have a limited First Amendment right to communicate with family and friends, *see Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003), "prisoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their First Amendment rights." *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (*per curiam*) (quoting *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994)). "[A] prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Id*. (citing *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). Moreover, where there are alternative means of communicating with persons outside of the prison, such as in person visits or mail, the restrictions on telephone use is more likely to be

considered reasonable. *See Almahdi*, 310 F. App'x at 522; *Ortiz-Medina v. Bradley*, No. 19-2133, 2020 WL 362697, at *5 (M.D. Pa. Jan. 22, 2020); *Graf v. Lanigan*, Civ. A. No. 14-2613, 2016 WL 324946, at *2 (D.N.J. Jan. 27, 2016) ("Thus, as Mr. Graf has alternative means to communicate with his family and friends, even those who do not have a landline telephone number, his First Amendment rights are not violated by the NJDOC's policy [preventing him from calling cellular telephone numbers]."). Zuber has failed to allege whether he had alternate means of communicating with family and friends. Without additional information, the Court is unable to discern a facially plausible constitutional violation. *Accord Aruanno v. Johnson*, 568 F. App'x 194, 195 (3d Cir. 2014) (*per curiam*) (holding that conclusory allegations "concerning [prisoner's] lack of phone access to friends and family" failed to state a facially plausible First Amendment claim).

Based on the above, Zuber's § 1983 claims based on his conditions of confinement are dismissed. However, those claims are dismissed without prejudice and Zuber may file an amended complaint that corrects the deficiencies in those claims.

### C.     Negligence Claims

Liberally construing the Complaint, it is possible that Zuber also intended to assert negligence claims in connection with his becoming infected with COVID-19 at SCI Phoenix. Negligence claims arise under state law. Because we are dismissing Zuber's federal law claims, we will not exercise supplemental jurisdiction under 28 U.S.C. § 1367 over any state law claims.[6]  The only independent basis for jurisdiction over any such claims is 28 U.S.C. §

---

[6] The Court has granted Zuber leave to file an amended complaint correcting the deficiencies in his § 1983 claims based on his conditions of confinement brought against Defendants in their personal capacities. If Zuber amends his complaint to assert facially plausible § 1983 claims based on his conditions of confinement, the Court will be able to exercise supplemental jurisdiction over Zuber's state law negligence claim.

1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  Since the Complaint is silent on the citizenship of the parties, Zuber has not met his burden for establishing a basis for diversity jurisdiction over any state law claims.  Accordingly, the Court dismisses Zuber's state law claims without prejudice.[7]

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Zuber's Complaint in part with prejudice and in part without prejudice.  Zuber's federal claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and his state claims are dismissed for lack of subject matter jurisdiction. Zuber's official capacity claims are dismissed with prejudice and his individual capacity federal

---

[7] Thus, the Court can exercise supplemental jurisdiction over Zuber's state law negligence claim if the amended complaint states facially plausible federal law claims or, if Zuber fails to state facially plausible § 1983 claims in the amended complaint, the Court can exercise diversity jurisdiction over Zuber's state law claim if he can establish that the parties are diverse and that the matter in controversy exceeds $75,000.  See 28 U.S.C. § 1332.

and state law claims are dismissed without prejudice.  Considering Zuber's *pro se* status, he will

be given the option of filing an amended complaint in the event he can cure the defects the Court

has noted as to the claims dismissed without prejudice.

An appropriate Order follows.

**BY THE COURT:**

/s/ John R. Padova

_____

**JOHN R. PADOVA, J.**