**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FANON ZUBER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-3661** |
| | : | |
| **JAIME SORBER, *et al.*,** | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**PADOVA, J.**                                                                                    **APRIL 20, 2023**

*Pro se* Plaintiff Fanon Zuber, a prisoner at SCI Albion, filed this civil rights action

pursuant to 42 U.S.C. § 1983, asserting claims against SCI Phoenix prison officials because he

contracted COVID-19 while incarcerated there.  The Court previously dismissed Zuber's claims

in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  Zuber

returned with an Amended Complaint.  For the following reasons, the Court will dismiss Zuber's

Amended Complaint with prejudice.

**I.     FACTUAL ALLEGATIONS**

In his initial Complaint, Zuber asserted Eighth Amendment claims based on his exposure

to and contraction of COVID-19 from a cellmate.[1]  (Compl. at 15.)[2]  He alleged that SCI Phoenix

officials had failed to properly test and quarantine the cellmate before placing him in Zuber's

---

[1] Zuber's initial Complaint named the following Defendants associated with SCI Phoenix:  (1) Jaime Sorber, Superintendent; (2) Bernard Panasiewicz, Deputy Superintendent; (3) Mandy Sipple, Deputy Superintendent; (4) Joseph Terra, Deputy Superintendent (5) Darryl Bradley, Deputy Superintendent; (6) Robert Terra, Major; (7) Scott Bowman, Major; (8) Gina Clark, Major; (9) Thomas Grenevich, Unit Manager; (10) James Day, Unit Manager; and (11) Dr. Stephen Kaminsky.  (Compl. at 14.)  His Amended Complaint named all of the same Defendants, with the exception of Major Robert Terra.  (Am. Compl. 1, ECF No. 11.)

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

cell.  (*Id*.)  Once Zuber contracted COVID-19, he alleged that the conditions of his confinement while isolating to recover from COVID-19 – including being denied cleaning and hygiene products, being exposed to constant lighting, and not being permitted to shower or use the telephone – were unconstitutional.  (*Id*. at 15-17.)  The Court understood Zuber to be asserting Eighth Amendment deliberate indifference claims pursuant to § 1983.  Liberally construing the Complaint, the Court also understood Zuber to assert negligence claims in connection with his COVID-19 infection.

In a January 9, 2023 Memorandum, the Court dismissed Zuber's Complaint upon screening pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a plausible claim for relief. *See Zuber v. Sorber*, No. 22-3661, 2023 WL 144437, at *7 (E.D. Pa. Jan. 9, 2023).  The Court dismissed Zuber's Eighth Amendment deliberate indifference claims for a number of reasons.[3] First, the Complaint failed to allege plausible claims for relief because Zuber did not allege how any of the named Defendants were personally involved in the alleged violations of his constitutional rights.  *Id*. at *3-4.  Second, as to his claim that Defendants failed to manage the spread of COVID-19, Zuber offered only conclusory allegations and failed to raise a plausible inference that prison officials disregarded an excessive risk to his health or safety.  *Id*. at *5. Third, as to Zuber's claims related to the conditions of his confinement, the Court concluded that deprivations of running water for three days, and deprivations of showers, telephone calls, and cleaning products for fourteen days were not sufficiently serious and did not otherwise demonstrate that Defendants were deliberately indifferent to Zuber's health or safety.  *Id*. Fourth, Zuber failed to provide sufficient details about his constant exposure to light while

---

[3] The Court also dismissed all official capacity claims against Defendants as barred by Eleventh Amendment immunity. *Zuber*, 2023 WL 144437, at *3.  In his Amended Complaint, Zuber alleges individual capacity claims only.  (*See* Am. Compl. ¶ 7, ECF No. 11.)

housed on the Special Observation Unit, including any facts about the harm it caused him. *Id*. at *6. Fifth, the Court dismissed Zuber's Eighth Amendment claim arising from his alleged deprivation of telephone calls during his 14-day isolation because that claim is not supported by law. *Id.*  The Court also dismissed any First Amendment claim Zuber intended to assert because he failed to allege whether he had alternate means of communicating with family and friends. *Id*. Finally, the Court dismissed any state law negligence claims Zuber intended to raise because he did not to allege the citizenship of the parties and thus failed to meet his burden for establishing diversity jurisdiction over these claims. *Id*. at 7.  The Court provided Zuber with an opportunity to cure the deficiencies by filing an amended complaint.

Zuber filed an Amended Complaint that names the same Defendants as those named in his original Complaint, with the exception of Major Robert Terra.  (Am. Compl. ¶ 5.)  Zuber also appears to assert the same allegations in his Amended Complaint as he did in his Complaint, with few exceptions.[4]  In his Amended Complaint, Zuber again alleges that he contracted COVID-19 from a cellmate who had just transferred to SCI Phoenix after the prison failed to properly quarantine the cellmate upon his arrival.  (Am. Compl. ¶¶ 10-16.)  The cellmate was placed in the quarantine unit for fourteen days and then placed with Zuber in the R-Unit.  (*Id*. ¶¶ 10-11.)  Although the cellmate was tested for COVID-19 on the seventh day of his quarantine, he was not tested again before being placed in a cell with Zuber.  (*Id*. ¶ 10.)  Zuber alleges that Defendant James Day was "negligent in placing inmates who were not tested and cleared after the 14-day quarantine."  (*Id*. ¶ 11.)  Zuber also alleges that Defendant Dr. Kaminsky failed to test

---

[4] In his Amended Complaint, Zuber names Defendants in some of his factual allegations. He also includes allegations about the harm he suffered from constant exposure to light.  In addition, Zuber removes allegations that he was deprived of water for three days while he housed on the R-Unit from his Amended Complaint.  Zuber also adds a Fourteenth Amendment equal protection claim for the first time in the Amended Complaint.

the cellmate before bunking him with Zuber, which "put [Zuber] at risk of contracture of COVID-19." (*Id*. ¶ 13.)

Eleven days after being placed with the cellmate, Zuber began to feel symptoms of COVID-19 (headache, body aches, and chills) and two days after feeling symptoms, he tested positive for the virus. (*Id*. ¶¶ 14-16.) Zuber was placed in the Special Observation Unit, which was being used as a COVID-19 isolation unit. (*Id*. 16.) Despite "experiencing light sensitivity due to headaches," Zuber was placed in a cell with "constant light which brightened every two hours." (*Id*.¶ 17.) The constant light caused Zuber to suffer "sleep deprivation, irritability, headaches, eyestrain, fatigue, and difficulty concentrating." (*Id*.) Zuber states that Dr. Kaminsky oversaw the Special Observation Unit and COVID patients. (*Id*. ¶ 19.)

Zuber was subsequently moved from the Special Observation Unit to the L-C Unit, which "used the C-Pod to house those quarantining from COVID-19." (*Id*. ¶ 20.) The purpose of the C-Pod was "to isolate the individuals and allow recovery and safety so that they could be reintroduced into the population with others." (*Id*. ¶ 21..) There were 24 cells on the C-Pod and only three other inmates were there at the time Zuber was there. (*Id*.) Despite this, the prison required Zuber to share a cell with another COVID-19 positive inmate who had "different symptoms" than Zuber without regard to "cross contamination or enhancement of disease." (*Id*. ¶ 23.) Zuber alleges that the cell assignment showed "deliberate indifference on the part of Defendant UM Thomas Grenevich." (*Id*. ¶ 24.)

During his two-week stay on the L-C Unit, Zuber was not provided with a bar of soap, a washcloth, or cleaning supplies "to ensure a clean and hygienic living space." (*Id*. ¶¶ 25, 27.) He was also not able to take a shower or use the telephone while on the L-C Unit. (*Id*. ¶¶ 25, 28.) Finally, he was not permitted his "personal property" on the unit, such as his hygiene

products, change of underwear, and food.  (*Id.* ¶ 29.)  After Zuber complained about the lack of showers and telephone usage in the COVID-19 isolation unit, prison officials allegedly began providing them to inmates at the unit.  (*Id.* ¶ 30.)  Zuber alleges that Defendants Sorber, Panasiewicz, Sipple, J. Terra, Bradley, Bowman, and Clark "are responsible for the policy and/or directives and measures that were applied . . . on the L-C Unit.  (*Id.* ¶ 33.)  He further alleges that Defendants Sorber, Panasiewicz, Sipple, J. Terra, Bradley, Bowman, Clark, and Grenevich were "deliberately indifferent" because they "disregarded the excessive risk to [Zuber]'s health and safety" by creating a policy and directives that deprived inmates on the L-C Unit of showers, cleaning supplies, personal property, and phone calls."  (*Id.* ¶ 38..)  Zuber also states that these policies "deprived him of equal protection . . . because of the lack of application of such measures to those similarly situated before or after [Zuber's] stay in the unit.  (*Id.* ¶ 33.)

Based on these allegations, Zuber asserts Eighth Amendment claims and Fourteenth Amendment Equal Protection claims under § 1983.[5]  He seeks money damages. (*Id.*)[6]

## II.    STANDARD OF REVIEW

Although Zuber has paid the full filing fee required to commence this civil action, the Court is still obligated to screen his Amended Complaint pursuant to 28 U.S.C. § 1915A.  *See Sinkler v. Clark*, Civ. A. No. 19-936, 2019 WL 6328031, at *2 (M.D. Pa. Nov. 26, 2019) (citing *Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000)).  "Section 1915A requires that the Court

---

[5] Zuber also references 28 U.S.C. § 2241, which addresses habeas petitions that seek release from incarceration, and 28 U.S.C. § 1651 (All Writs Act), which grants district courts authority to issue a writ of mandamus when "necessary or appropriate in aid of [its] jurisdiction." Based on the facts alleged in Zuber's Amended Complaint, there is no basis for relief under either of these provisions.

[6] Zuber has again omitted any allegations about the citizenship of the parties.  The Court presumes he has therefore abandoned any state law negligence claims.  Zuber also appears to have abandoned any claims based on any alleged deprivation of water.

'review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Id.* (quoting 28 U.S.C. § 1915A(a)). "In doing so, the Court must dismiss a complaint or any portion thereof that 'is frivolous, malicious, or fails to state a claim upon which relief may be granted,' or that "seeks monetary relief from a defendant who is immune from such relief.'" *Id*. (quoting first 28 U.S.C. § 1915A(b)(1), then quoting 28 U.S.C. § 1915A(b)(2)).

The Court considers whether a complaint fails to state a claim under § 1915A(b)(1) using the legal standard applicable to motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* (citing *Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the] *pro se* complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible Eighth Amendment claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (third, fifth and sixth alterations in original) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Zuber is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244-45 (3d Cir. 2013)).

**III.     DISCUSSION**

In his Amended Complaint, Zuber again asserts constitutional claims against Defendants pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  *See Stephany v. Dep't of Corr.*, 397 F. Supp. 3d 654, 656 (E.D. Pa. 2019).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *Id.* (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  "In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims."  *Gonzalez v. Russell*, Civ. A. No. 20-4531, 2021 WL 1088318, at *4 (E.D. Pa. Mar. 22, 2021) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (add'l citations omitted).

**A.     Eighth Amendment Claims Based on Defendants' Alleged Failure to Manage Spread of COVID-19**

Zuber again asserts Eighth Amendment claims based on Defendants' alleged failure to manage the spread of COVID-19.   He alleges that Defendants Sorber, Panasiewicz, Sipple, J. Terra, Bradley, Bowman, and Clark "failed to provide for adequate isolation or quarantine measures by their creation and implementation of SCI-Phoenix's COVID-19 policy."  (Am. Compl. ¶ 40.)  He also alleges that Defendants Grenevich, Day, and Kaminsky "failed to provide for adequate isolation or quarantine measures by their implementation of" this COVID-19 policy.  (*Id*.)  As the Court explained in the January 9 Memorandum, "[t]o state a constitutional claim in the context of COVID-19 management, Zuber must allege facts to support a plausible inference that prison officials were deliberately indifferent to his serious medical needs."  *Zuber*, 2023 WL 144437, at *4 (citing *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir.

7

2020)).  "To meet this standard, the facts alleged must reflect that the 'Government knew of and disregarded an excessive risk to [his] health and safety.'" *Id.* (alteration in original) (quoting *Hope*, 972 F.3d at 329).  "The context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and, in this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic, as constitutional rules 'are not subject to mechanical application in *unfamiliar territory*.'"  *Id.* at 330 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) (emphasis in original)).

Zuber again fails to state a plausible Eighth Amendment claim.  Similar to the allegations in his original Complaint, the allegations in his Amended Complaint fail to raise a plausible inference that any Defendant disregarded an excessive risk to Zuber's health or safety.  Zuber states that Day was "negligent in placing inmates [in the same cell] who were not tested and cleared after the 14-day quarantine" and that Dr. Kaminsky "put [Zuber] at risk" of contracting COVID-19 by not testing his cellmate at the end of the 14-day quarantine before clearing him to be placed with Zuber.  (*Id.* ¶¶ 11, 13.)  However, it is well-established that "[d]eliberate indifference requires significantly more than negligence," *Hope*, 972 F.3d at 329 (citation omitted), and failure to eliminate possible exposure to COVID-19 does not constitute deliberate indifference.  *Id.* at 330 (stating that "a failure to eliminate all risk" does not "establish that the Government was deliberately indifferent to [plaintiffs'] serious medical needs"); *see also Williamson v. Viles*, Civ. A. No. 22-4581, 2023 WL 2424163, at *2 (D.N.J. Mar. 9, 2023) ("Exposure [to COVID-19] alone does not establish a constitutional violation . . . ." (second alteration in original) (quoting *Graham v. Aviles*, Civ. A. No. 22-5760, 2022 WL 16949131, at

*4 (D.N.J. Nov. 14, 2022))).  In addition, Zuber's allegation that Grenevich "showed deliberate indifference" by placing him with another COVID-19 positive inmate while both were in isolation and recovery (*see* Compl. ¶¶ 21-24) is conclusory and does not raise a plausible inference that Grenevich knew of and disregarded an excessive risk to Zuber's health and safety.

Moreover, as the exhibits to Zuber's Amended Complaint reveal, and as the Court observed in its January 9 Memorandum, SCI Phoenix officials had "implemented various measures established by the Pennsylvania Department of Corrections to combat the spread of COVID-19."  *Zuber*, 2023 WL 144437, at *5 ("In addition to requiring that inmates transferring to the prison be tested for COVID-19 prior to transfer and quarantine for fourteen days upon arrival, the prison also implemented measures such as the issuance of masks, cleaning schedules, quarantine guidelines, and small cohort sizes." (quotation omitted)).  Where a prison facility has taken concrete steps towards mitigating the medical effects of COVID-19, as SCI Phoenix has done here, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus, even though prison official did not "eliminate all risk" of contracting COVID.  *Hope*, 972 F.3d at 330-31; *see also Muata v. Hicks*, No. 21-3210, 2022 WL 2526692, at *1 (3d Cir. July 7, 2022) ("Even if plaintiffs could show that [the high-ranking prison official defendants] knew of the risk posed by COVID-19, despite its unprecedented and unpredictable nature, they have failed to allege that either defendant disregarded that risk when creating the prison's policies.").  Accordingly, Zuber's Eighth Amendment claims based on Defendants' alleged failure to manage the spread of COVID-19 will be dismissed. [7]

---

[7] To the extent that Zuber brings claims against some of the Defendants based solely on their involvement in denying his grievances, such claims are not viable.  This is because participation in the grievance process does not, without more, establish involvement in the

B.      **Eighth Amendment Claims Based on Conditions of Confinement**

Zuber also reasserts Eighth Amendment claims based on the conditions of his

confinement while isolating to recover from COVID-19.  These conditions include exposure to

constant lighting and deprivations of showers, personal property, and the use of a telephone.  As

the Court stated in its January 9 Memorandum, Courts "apply a two-prong test '[t]o determine

whether prison official have violated the Eighth Amendment.'"  *Zuber*, 2023 WL 144437, at \*5

(quoting *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020)).  Thus, the

complaint must allege that "(1) the deprivation [is] 'objectively, sufficiently serious; a prison

official's act or omission must result in the denial of the minimal civilized measure of life's

---

underlying constitutional violation.  *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019)
(*per curiam*) ("The District Court properly determined that Defendants . . . who participated only
in the denial of [the plaintiff]'s grievances – lacked the requisite personal involvement [in the
conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*)
("Although some of these defendants were apparently involved in responding to some of [the
plaintiff]'s prison grievances, there are no allegations linking them to the underlying incidents
and thus no basis for liability based on those later grievance reviews.").

        Moreover, to the extent that Zuber alleges a state-created danger claim under the
Fourteenth Amendment, the claim is dismissed because it is based on the same allegations
underlying Zuber's Eighth Amendment claims, and thus barred by the "explicit textual source"
rule.  *See generally Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular
Amendment provides an explicit textual source of constitutional protection against a particular
sort of government behavior, that Amendment, not the more generalized notion of substantive
due process, must be the guide for analyzing these claims." (internal quotations omitted)); *Betts
v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (discussing the "more-specific-
provision rule" pursuant to which claims should be analyzed under the standards relevant to the
more specific provision of the Constitution under which that claim falls, rather than under the
Due Process Clause of the Fourteenth Amendment as a catch all (citation omitted)); *Banks v.
Mozingo*, 423 F. App'x 123, 128 (3d Cir. 2011) ("[T]o the extent that [the plaintiff] alleges
[Fourteenth Amendment] due-process violations relating to excessive force, the denial of
medical care, and the conditions of his confinement, these claims are properly analyzed under the
Eighth Amendment." (citing *Albright*, 510 U.S. at 273)); *Houser v. Folino*, Civ. A. No. 10-0416,
2015 WL 7289405, at \*1 (W.D. Pa. Nov. 16, 2015) ("Because Plaintiff's claims here fit squarely
within the Eighth Amendment's prohibition against deliberate indifference to a prisoner's
medical needs, the more-specific-provision rule forecloses a Fourteenth Amendment substantive
due process claim in this case." (citations omitted)).

necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter*, 974 F.3d at 441 (alterations in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  However, negligence is insufficient to allege a claim under § 1983. *See id*. at 835; *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) (*per curiam*) ("Here, the allegations contained in the amended complaint, taken as true, assert a simple negligence claim at most, and thus do not state a claim of a constitutional violation under the Eighth Amendment.").  Only conditions of confinement that "cause inmates to endure . . . genuine privations and hardship over an extended period of time" violate the Eighth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (quotation omitted).

### 1.    Exposure to Constant Light

Zuber has again failed to allege an Eighth Amendment claim based on his exposure to constant light while on the Special Observation Unit.  As the Court explained in the January 9 Memorandum, "[r]equiring an inmate to live in 'constant illumination can, under certain circumstances, rise to the level of an Eighth Amendment violation if it causes the inmate to suffer a significant medical condition." *Zuber*, 2023 WL 144437, at *6 (citing *Bacon v. Minner*, 229 F. App'x 96, 100 (3d Cir. 2007) (add'l citation omitted)).  However, the Court also explained in the January 9 Memorandum that Zuber's light exposure claim was not adequately pled because he did not include any facts about "how long he stayed at the Special Observation

11

Unit or how long he was allegedly exposed to constant light." *Id.* at 6.  Although Zuber includes

additional allegations about the harm the constant light caused – sleep deprivation, irritability,

headaches – he again failed to include any facts about his exposure.  Even if Zuber had included

sufficient facts about the duration and extent of his exposure to light, the claim nevertheless fails

because he has not alleged that any prison official was deliberately indifferent to his health or

safety.  Zuber brings this claim against Dr. Kaminsky because he allegedly oversaw the Special

Observation Unit and the COVID patients who stayed there.  However, Zuber does not allege

that Dr. Kaminsky was aware that Zuber was experiencing adverse effects from the constant

lighting, let alone that Zuber was even subjected to this condition.  In the absence of any

allegations that Dr. Kaminsky knew of and disregarded an excessive risk to Zuber's health or

safety, Zuber is unable to state an Eighth Amendment claim for deliberate indifference.

### 2.      Showers, Cleaning Products, and Personal Property

Zuber has also not stated plausible Eighth Amendment claims based on the deprivation of

showers and cleaning products for his fourteen-day COVID-19 isolation period.  As the Court

concluded in its January 9 Memorandum, Zuber's allegations "do not support an inference that

the deprivations were sufficiently serious, that he was harmed by the deprivations, or that

Defendants consciously disregarded a serious risk to his health or safety." *Zuber*, 2023 WL

144437, at *6 (citation omitted); *see also Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir.

2010) (*per curiam*) (concluding that denial of showers for fifteen days did not violate Eighth

Amendment when inmate did not "suffer[ ] any harm as a result of the denial of additional

showers"); *Thomas v. SCI Graterford*, Civ. A. No. 11-6799, 2014 WL 550555, at *5 (E.D. Pa.

Feb. 12, 2014) (concluding that denial of cleaning supplies for a two-week period was not

sufficiently serious to satisfy the objective component of an Eighth Amendment claim).  The

Amended Complaint alleges no additional facts to support these claims.  Accordingly, these claims must be dismissed.

Zuber also alleges that he was deprived of his "personal property" such as hygiene products, underwear, and food.  To the extent that Zuber intends to raise an Eighth Amendment claim based on these alleged deprivations, the claim fails because Zuber has not alleged any facts that raise a plausible inference that these items are life necessities as opposed to mere inconveniences.  Moreover, he does not allege any facts showing how the alleged deprivation of his personal items caused him harm.  *See Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (*per curiam*) (concluding that whether plaintiff suffered harm was critical to determination of whether conditions were unconstitutional).  To the extent Zuber intended to assert a due process claim based on the deprivation of his personal items, that claim also fails because a prisoner in Pennsylvania cannot state a constitutional claim based on the loss of his property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." (citation omitted)); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property).

### C.   First Amendment Claims based on Deprivation of Telephone Calls[8]

Zuber also again fails to allege a First Amendment claim based on his inability to make telephone calls during his 14-day isolation to recover from COVID-19.  As the Court explained in its January 9 Memorandum, "[a] prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'"  *Zuber*, 2023 WL 144437, at *6 (quoting *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (*per curiam*)). The Court also explained that "where there are alternative means of communicating with persons outside of the prison, such as in person visits or mail, the restrictions on telephone use is more likely to be considered reasonable."  *Id*. (citing cases).  For the same reason the claim failed in his Complaint, the claim again fails because Zuber does not provide any factual allegations about whether he had alternative means of communicating with friends and family.  *Accord Aruanno v. Johnson*, 568 F. App'x 194, 195 (3d Cir. 2014) (*per curiam*) (holding that conclusory allegations "concerning [prisoner's] lack of phone access to friends and family" failed to state a claim).

### D.   Equal Protection Claim

For the first time in his Amended Complaint, Zuber asserts a claim under the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause provides that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To state an equal protection violation, a prisoner must allege "that he was

---

[8] The Court dismissed Zuber's Eighth Amendment claims based on the deprivation of telephone calls during his isolation period.  *See Zuber*, 2023 WL 144437, at *6; *see also Castillo v. FBOP*, Civ. A. No. 05-5076, 2006 WL 1764400, at *6 (D.N.J. June 23, 2006) ("Indeed, telephone and visitation contacts do not qualify as minimal life's necessities, such as adequate food, clothing, shelter, sanitation, medical care and personal safety.").

treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)).  Alternatively, a prisoner can assert an equal protection claim based on a "class of one" theory by alleging that he was intentionally treated differently from other similarly situated inmates and that there was no rational basis for the treatment.  *See Phillips v. Cnty of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).  "Persons are similarly situated" for purposes of an equal protection claim "when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (*Nordlinger v. Hahn*).

Zuber alleges that Defendants Sorber, Panasiewicz, Sipple, Terra, Bradley, Scott, Bowman, Clark, and Grenevich, "collectively prejudiced" him by implementing a policy on the L-C Unit of denying showers, cleaning supplies, and telephone calls to inmates isolating to recover from COVID-19.  (Am. Compl. ¶ 26.)  He further alleges that the same Defendants, with the exception of Grenevich, "deprived him of equal protection . . . by [not applying] such measures to those similarly situated before or after the Plaintiffs [sic] stay at the unit."  (*Id*. ¶ 33.) Zuber's vague and conclusory allegations do not support an Equal Protection claim under either theory.  First, Zuber does not allege that he suffered any intentional discrimination based on his membership in a protected class.  "[P]risoners are not a protected class of individuals."  *Wilson v. Jin*, 698 F. App'x 667, 672 n.4 (3d Cir. 2017) (*per curiam*) (citing *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001)).  Second, Zuber fails to allege a non-class-based equal protection claim.  He alleges in conclusory fashion that the inmates housed on the L-C Unit prior to and after his assignment there were "similarly situated" but he does not allege any facts describing why they were similarly situated and how they were treated differently.  *See Perano v. Twp. Of*

*Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, [plaintiff] must allege facts sufficient to make plausible the existence of such similarly situated parties." (citations omitted)); *Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (rejecting class of one equal protection claim based on denial of certain medical equipment where inmate did "not allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis for his different treatment").

Even if Zuber had identified similarly situated inmates, his equal protection claim nevertheless fails because he does not allege a lack of any rational basis for the alleged differential treatment he received.  *Aulisio v. Chiampi*, 765 F. App'x 760, 765 (3d Cir. 2019) (*per curiam*) ("Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim.").  Indeed, Zuber's Amended Complaint includes allegations that support an inference that Defendants had a rational basis for the alleged deprivations.  As Zuber concedes in the Amended Complaint, Grenevich "confirmed" that the deprivations of showers and telephone calls on the L-C Unit were because of the need to isolate COVID-19 positive inmates in their cells for the duration of the fourteen-day quarantine period. (Am. Compl. ¶ 30.)  Accordingly, Zuber fails to state a plausible equal protection claim.  *See Aulisio*, 765 F. App'x at 765 (affirming dismissal of equal protection claim where inmate failed to "show that the adverse treatment he experienced was so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational" (alterations in original) (citations and quotations omitted)).

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Zuber's Amended Complaint with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a facially plausible claim for

relief.  Since Zuber was given an opportunity to amend the defects in his claims and was unable to do so, the Court concludes that further attempts to amend would be futile.  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (stating that amendment by pro se litigant would be futile when litigant "already had two chances to tell his story").

An appropriate Order follows.

**BY THE COURT:**

/s/ John R. Padova

**JOHN R. PADOVA, J.**